[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
These two condemnation appeals were consolidated for hearing and disposition as they involve adjoining properties with the same owner. The City of New Haven condemned the properties for a new school building site.
The court heard an appraiser for each party and the property owner. At the conclusion of the evidence and at the request of the parties, the court visited the site where he was met by counsel and the owner. The properties are located at and known as 84-86 James Street and 88 James Street in New Haven.
Some of the occupied rental units were available for inspection and at least two vacant units were seen.
These general comments are appropriate in view of the wide variance between the appraisals, with the city evaluations at $120,000 (#84-86) and $136,000 (#88). The owner's appraisals are for $164,000 and $203,000, respectively. The owner testified and gave his own opinion that the properties were worth $210,000 and $275,000.
The rental units are well laid out and present pleasant, but basic, living space. They are clean with white stucco ceilings. The walls, closets, counters and bathrooms are in good condition. It must be noted, however, that the renovation of these structures took place in 1988 or 1989 and signs of wear and tear are apparent. (The vacant basement unit in #88 is part of a more recent renovation). These units appear to have been well maintained.
The common areas are not as well maintained, with rubber stair treads chipped and base molding peeling from the walls. The exterior fire escapes, stairs and decks would appear to be in need of fresh staining or CT Page 14863 preservative.
The buildings are not attractive and are very close together. Prior to its destruction, the building adjacent to #84-86 was almost as close as #88 is to #84-86. Photographs of the comparable sales utilized by the city's appraiser reflect many pleasant features despite their age, notably the side yards, set backs, and general appearance.
Also, this section of James Street contained many industrial sites, while most of the comparables are in what are basically residential settings.
 DISCUSSION I.
While the owner, Wendell C. Harp, feels strongly that his opinions reflect the true value of these properties, there is no basis upon which the court can adopt his figures.
The court is charged with the duty to determine "market value." That term, set forth in the owner's appraisal, is:
 "The most probable price in cash, terms equivalent to cash, or in other precisely revealed terms, for which the appraised property will sell in a competitive market under all conditions requisite to fair sale, with the buyer and seller each acting prudently, knowledgeably and for self-interest, and assuming that neither is under undue duress".
Mr. Harp addressed his costs in bringing these properties to their present condition, the net income produced and their positive features.
However, the above quoted definition was not shown to be applicable to his approach and the market data produced by both appraisers indicates the owner's evaluations are not realistic.
 II.
The court has studied all the appraisals and updates submitted and has examined the data pertaining to the comparable sales unitized by both appraisers.
The adjustments applied to the appraisals have been examined and CT Page 14864 considered along with the sales data.
With respect to #84-86 James Street, Philip Ball, the owner's appraiser, used a total of 6 comparable sales in the Fair Haven area. These properties sold for figures ranging from a low of $120,000 to a high of $139,900. He then concludes that:
 "Based on both original and new data, plus adjustments for time (the market continued to rise sharply), building size (understanding that building size and rate per square foot are inversely related), conditions in the present real estate and mortgage markets, appropriate adjustments for building condition, location, and lot size and minus adjustment for garages, it is the opinion of your appraiser that the subject property has a value by comparison of $65.00 per square foot, including land."
He proceeds to find the market value to be $164,000, though no value is assigned to the items adjusted. As this court knows this area of the city, one can take exception with some of these adjustments which favor the subject property. "Location" is one area which could be debated. As noted above, the subject properties are in an area of mixed uses, most of the comparables are in residential areas and possess amenities not addressed in Mr. Ball's report.
The city's appraisals are noteworthy in that of six comparable sales utilized, the highest sale price was $135,000 (2 sales). Another property sold for $130,000. of the three comparables to which adjustments were applied, the highest sales price was $132,000 — a parcel literally a stone's throw from the subject property and presenting a much more attractive site and building. This sale did occur over a year before the taking, however, and according to Mr. Ball, the real estate market rose substantially in this time period.
The court concludes that the owner has not proved the fair market value he claims.
While #88 is a better looking building and contains a fourth dwelling unit, the court has the same problems with Mr. Bell's subjective application of adjustments. Utilizing only one additional sale on Lenox Street in the amount of $250,000, he concludes that #88 has a market value of $203,000.
The city's appraiser, Gordon Williams, used his three comparables for CT Page 14865 #84-86 and three additional sales. Except for the Lenox Street property, the highest sale price reflected in all the comparables is that of one of Mr. Williams, located at 386 Blatchley Avenue. It sold within the month the subject property was taken by the city for $150,000. It is very close in size to #88, has 1446 more square feet of land area and also four dwelling units. It has three fewer bedrooms and one more bathroom in a better location. It was testified as being in similar condition to the subject property.
Mr. Ball's use of 233 Lenox Street as a comparable with his adjustments to market price is questionable.
First of all, this property is located in the "Fair Haven Heights" section, above the Quinnipiac River, in an area which enjoyed a remarkable revitalization before it was stalled by the economic decline circa 1989-91. Its lot area is more than five times that of #88, the structure contains over 400 square feet more than #88. It is located on a much less traveled primarily residential street in a better section of Fair Haven. The building itself is quite handsome and the lot size permits some landscaping and space between adjoining structures. Numerous properties in this immediate area were renovated and improved during the resurgence of the "Heights."
Thus, for Mr. Ball to make a 15% reduction from the sale price of this property to justify his evaluation of the subject is not justified.
The market value suggested by Mr. Ball is rejected.
 III.
After, reviewing all of the appraisal data, its notes of the court testimony, and the conclusions reached above, it is the conclusion of the court that Mr. Williams' evalutions are the more realistic and would be accepted by the court save for one factor the court outlines below.
After interior inspections, both appraisers described these rental units to be in the above average to good condition for this area. By necessity, these appraisers could not inspect the numerous units located in the various comparables they utilized and thus assumed them to be in the "average" category when applying the sales comparison approach to value.
This would suggest that the subject properties should be evaluated so as to reflect their superior rating. Mr. Williams, the city's appraiser, indicated an appropriate adjustment to reflect the condition of #84-86 CT Page 14866 would be $15,000. This is a three unit building. For #88, a four unit structural, an addition of $20,000 is appropriate.
 CONCLUSION
It is the conclusion of the court that the fair market value of the subject properties on July 12, 2002, the date of the taking, is:
 for #84-86 James Street, $135,000 for #88 James Street, $156,000,
and judgment may enter in each file to reflect those respective findings.
The owner-appellant is awarded his appraiser's fee in the amount of $1,000. The additional $800 requested for Mr. Ball's subsequent testimony in rebuttal is disallowed as in that testimony he was acting as a fact witness, subsequent to his testimony as an expert.
___________________ Anthony V. DeMayo, J.T.R. CT Page 14867